IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
(DALLAS DIVISION)

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CASE NO. 3:18-CV-02699-N |
| STANFORD HILL, JR., | ) | |
|     Plaintiff | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CREDIT UNION OF TEXAS, | ) | |
|     Defendant | ) | |

## DEFENDANT'S BRIEF IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT

Submitted By:

/s/ Randy Roberts
Randy Roberts, ID#17016400
Attorney for Defendant Credit Union of Texas
Blalack & Williams, PC
4851 LBJ Freeway, Suite 750
Dallas, TX 75244
214/630-1916, 214/630-1112 (Fax)
rroberts@blalack.com

# TABLE OF CONTENTS

Table of Authorities                                                                iii

Summary                                                                             1

Introduction                                                                        1

Supporting Materials                                                                2

Basis for Summary Judgment                                                          4

    1. Plaintiff's Claims                                      4

    2. Defendant's Counterclaim                                5

Established Facts                                                                    6

Argument and Authority                                                              11

    I.  Summary Judgment Standard                              11

    II. Telephone Consumer Protection Act                      12

        A.  Introduction                  12

        B.  Consent                       14

        C.  Revocation of Consent          15

        D.  Plaintiff Cannot Prove Revocation of Consent    15

        E.  Plaintiff Cannot Prove a Violation of the TCPA   17

        F.  *Young v. Medicredit*          18

    III.  Texas Debt Collection Act                           21

        A. Introduction                   21

        B. Consumer Debt                  22

        C. Statutory Violations           23

D.  Injury                                                      26

IV.  Defendant's Counterclaim                                   27

Conclusion                                                      28

Certificate of Service                                         28

## TABLE OF AUTHORITIES

**CASES**

*Ace American Insurance Company v. Freeport Welding & Fabricating, Inc.*,      11, 12
     699 F.3d 832 (5th Cir. 2012)

*Adamcik v. Credit Control Services, Inc.*,      14, 15
     832 F. Supp. 2d. 744 (W.D. Tex. 2011)

*Anderson v. Liberty Lobby, Inc.*, 477 U.S.242 (1986)      12

*Celotex Corp v. Catrett*, 477 U.S. 317 (1986)      11,17, 18, 24, 26

*Chaney v. Dreyfus Service Corp.*, 595 F. 3d 219 (5th Cir. 2010)      12

*Charles v. Exeter Finance Corp.*, 2017 WL 6888852 (S.D. Tex. 2017)      25

*Cherkaoui v. Santander Consumer USA, Inc.*,      14, 15, 17, 25
     32 F. Supp. 3d. 811 (S.D. Tex. 2014)

*Cunningham v. Credit Management, L.P.*, 2010 WL 3791104 (N.D. Tex. 2010)      14, 17

*Curtis v. Anthony*, 710 F. 3d 587(5th Cir. 2013)      11

*DIRECTV, Inc. v. Budden*, 420 F. 3d 521 (5th Cir. 2005)      12

*Duchene v. Hernandez,* 835 S.W.3d 251 (Tex. App. - El Paso, 2017; no pet.)      27

*Dunn v. Hunting Energy Services*, 288 F. Supp. 3d 749 (S.D. Tex. 2017)      4

*Express Working Capital, LLC v. One World Cuisine Group, LLC,*      27
     2019 WL 1959924 (N.D. Tex. 2019)

*Garcia v. Jenkins-Babb, LLP*, 2013 WL 6388443 (N.D. Tex. 2013)      23

*Garza v. Bancorp Group, Inc.*, 955 F. Supp. 68 (S.D. Tex. 1996)      22

*General Universal System, Inc. v. Lee,* 379 F.3d 131 (5th Cir. 2004)      12

*Lee v. Offshore Logistical and Transport, LLC*, 859 F.3d 353 (5th Cir. 2017).)      4, 12

*Malacara v. Garber,* 353 F. 3d 393 (5th Cir. 2003)      12

*Riviere v. Banner Chevrolet, Inc.*, 184 F. 3d. 457 (5th Cir. 1999)    23

*Robinson v. Wells Fargo Bank, N.A.*, 576 F. Appx. 358 (5th Cir. 2014)    25

*Saylor v. Pinnacle Credit Services, LLC*, 118 F. Supp. 3d.  881    23
    (E.D. Va. 2015, aff'd. 667 Fed. Appx. 829 (4th Cir. 2016))

*Van Patten v. Vertical Fitness Group, LLC*, 847 F. 3d. 1037 (9th Cir. 2007)    17

*Wease v. Ocwen Loan Servicing, LLC*, 2015 WL 12533060    21
    (N.D. Tex. 2015 (modified 2017 WL 1408821;
    aff'd in part, 915 F. 3d. 987 (5th Cir. 2019)))

*Wease v. Ocwen Loan Servicing, LLC*, 915 F. 3d. 987 (5th Cir. 2019)    24, 26

*Young v. Medicredit*, 2019 WL 1923457 (S.D. Tex. 4/29/2019)    18-20

## STATUTES, RULES, AND REGULATIONS

Local Rule 56.6    2

Rule 56(a), Fed. R. Civ. P.    11

Rule 56(c)(2), Fed. R. Civ. P.    4

Rule 803(6), Fed. R. Ev.    4

Rule 1003, Fed. R. Ev.    4

15 U.S.C. §1692c(a)(1)    25

47 U.S.C. §227    12

47 U.S.C. §227(b)(1)(A)    13

47 U.S.C. §227(b)(1)(A)(iii)    12

§122.051(a), Tex. Fin. Code    6

§392.001(2), Tex. Fin. Code    21, 22

§392.001(5), Tex. Fin. Code                                      21

§392.001(6), Tex. Fin. Code                                      21

§392.302(4), Tex. Fin. Code                         21, 22, 23, 24, 26

§392.403(a), Tex. Fin. Code                                      26

**OTHER AUTHORITIES**

*In re Rules Implementing the Telephone Consumer Protections Act of 1991*        14
     23 F.C.C.R. 559, 564 (2008)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
(DALLAS DIVISION)

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CASE NO. 3:18-CV-02699-N |
| STANFORD HILL, JR., | ) | |
|     Plaintiff | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CREDIT UNION OF TEXAS, | ) | |
|     Defendant | ) | |

**DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant, CREDIT UNION CREDIT UNION OF TEXAS submits this Brief in support of its Motion for Summary Judgment, and would show the Court as follows:

## SUMMARY

Defendant seeks summary judgment on all of Plaintiff's claims: (1) for violations of the Telephone Consumer Protection Act and (2) for violations of the Texas Debt Collection Act. Defendant also seeks summary judgment on its Counterclaim against Plaintiff for the unpaid amount of the debt owed by Plaintiff to Defendant.

## INTRODUCTION

This case arises out of a loan obtained by Plaintiff from Defendant in July 2017, in the amount of $1,000.00. After the loan became delinquent, Defendant initiated collection efforts, and assigned the account for collection to AP Account Services, an entity that conducts collection efforts

for Defendant on a contract basis.

Plaintiff instituted this case in April 2018, as Case No. 4:18-CV-01369 in the United States District Court for the Southern District of Texas, Houston Division. (Doc. 1).  The case was transferred to the Northern District of Texas, Dallas Division, by Order entered October 10, 2018. (Doc. 17).  On October 30, 2018, Defendant filed its Original Answer and Counterclaim.  (Doc. 22).

In his Complaint, Plaintiff alleges that he began receiving collection calls in October 2017, that on October 15, 2017 he requested that the calls cease, that Defendant continued to make calls after that date, and that Defendant harassed and abused Plaintiff through the frequency of calls. Plaintiff has asserted two causes of action: (1) violations of the Telephone Consumer Protection Act (Count I of Plaintiff's Complaint) and (2) violations of the Texas Debt Collection Act (Count II of Plaintiff's Complaint).  (Paragraphs 25 - 45 of Plaintiff's Complaint [Doc. 1]).

Defendant seeks summary judgment on all of the claims and causes of action asserted by Plaintiff in his Complaint.

In its Counterclaim, Defendant asserts that Plaintiff defaulted under the terms of his loan agreement with Defendant and that Defendant is entitled to recover the unpaid debt from Plaintiff. Defendant also seeks summary judgment on its Counterclaim.

## SUPPORTING MATERIALS

In support of this Motion, Defendant refers the Court to the pleadings in this case, which establish the claims and defenses at issue and which contain judicial admissions by Plaintiff.  In accordance with Local Rule 56.6, Defendant also refers the Court to the materials contained in the Appendix in support of Defendant's Motion for Summary Judgment (referred to as "D. App."),

consisting of the following materials:

- Exhibit D-1 – Membership Application and Account Authorization (D. App. 1).

- Exhibit D-2 – Loan Application (D. App. 4)

- Exhibit D-3 – Loan Agreement dated July 13, 2017 (D. App. 7)

- Exhibit D-4 – Loan History (D. App. 12)

- Exhibit D-5 – Collection History Report (AP Account Services) (D. App. 14)

- Exhibit D-6 – Recorded Telephone Conversations (Flashdrive) (D. App. 30)

- Exhibit D-7 – Written Transcript of Telephone Conversations (D. App. 32)

- Exhibit D-8 – Affidavit of Angela Faust (D. App. 39)

- Exhibit D-9 – Affidavit of Connie Shoemaker (D. App. 45)

- Exhibit D-10 – Collection History Report (CUTX) (D. App. 49)

- Exhibit D-11 – Plaintiff's Answer to Interrogatories (D. App. 103)

- Exhibit D-12 – Plaintiff's Supplement Answers to Interrogatories (D. App. 110)

- Exhibit D-13 – Plaintiff's Answers to Request for Production (D. App. 116)

- Exhibit D-14 – Plaintiff's Supplemental Answers to Request for Production (D. App. 122)

- Exhibit D-15 – Excerpts from the records of AT&T for Plaintiff's cell phone number (D. App. 128)[1]

All of these materials are submitted in admissible form or can be submitted at trial in admissible

form as authenticated duplicates or business records under Rules 803(6) and 1003, Fed. R. Ev. (See

---

[1] In response to a subpoena from Plaintiff, AT&T produced approximately 1300 pages of Plaintiff's cell phone records. The page numbers at the bottom right are on the documents as produced by AT&T. Exhibit D-15 consists of pages numbered by AT&T as 205-242, 281, 296, 319, and 585.

Rule 56(c)(2), Fed. R. Civ. P.; *Lee v. Offshore Logistical and Transport, LLC*, 859 F.3d 353, 355

(5th Cir. 2017).)  Exhibit D-7 (written transcription) is submitted as a guide to the audio recordings

in Exhibit D-6 and is entitled to consideration for summary judgment purposes. (See *Dunn v.*

*Hunting Energy Services*, 288 F. Supp. 3d 749, 766-67 (S.D. Tex. 2017).)


## BASIS FOR SUMMARY JUDGMENT

### 1.   Plaintiff's Claims

Defendant is entitled to summary judgment on Plaintiff's claims for violations of the

Telephone Consumer Protection Act for the following reasons:

   (1)   It is conclusively established that Plaintiff provided consent to be contacted at his

         cell phone number;

   (2)   It is conclusively established that Plaintiff did not revoke such consent;

   (3)   Plaintiff cannot provide sufficient evidence, and cannot demonstrate an issue of

         disputed fact, as to whether Plaintiff revoked such consent; and

   (4)   Plaintiff cannot provide sufficient evidence, and cannot demonstrate an issue of

         disputed fact, as to the date he revoked such consent, and Plaintiff therefore cannot

         demonstrate that any of the alleged calls violated the statute.

Defendant is entitled to summary judgment on Plaintiff's claims for violations of the Texas

Debt Collection Act for the following reasons:

   (1)   The subject debt was not a consumer debt and therefore the TDCA does not apply;

   (2)   It is conclusively established that Defendant did not violate the TDCA in that there

         were no calls made at odd or unusual hours and there were no threats of violence;

(3)     It is conclusively established that Defendant did not act with "intent to harass";

(4)     Plaintiff cannot provide sufficient evidence that Defendant threatened physical violence or called at improper times, and Plaintiff therefore cannot demonstrate an issue of disputed fact on that essential component of his claim under the TDCA;

(5)     Plaintiff cannot provide sufficient evidence that Defendant acted with intent to harass, and Plaintiff therefore cannot demonstrate an issue of disputed fact on that essential component of his claim under the TDCA; and

(6)     Plaintiff cannot produce sufficient evidence of actual damages, and Plaintiff therefore cannot demonstrate an issue of disputed fact on that essential component of his claim under the TDCA.

There is no genuine dispute as to any material fact concerning Plaintiff's claims under the TCPA and the TDCA.  Defendant is entitled to judgment as a matter of law on those claims.

## 2.     **Defendant's Counterclaim**

Defendant is entitled to summary judgment on its Counterclaim against Plaintiff for the following reasons:

(1)     It is conclusively established that Plaintiff executed a written loan agreement in favor of Defendant;

(2)     It is conclusively established that Plaintiff defaulted in his obligations under that loan agreement and that the loan has fully matured;

(3)     It is conclusively demonstrated that the amount remaining unpaid, and now due and owing, is $702.39 plus interest at the rate of 8.89% per annum from December 30,

2017; and

(4)     It is conclusively established that Defendant is the owner and holder of that debt.

Defendant is entitled to summary judgment as a matter of law on its Counterclaim.


## ESTABLISHED FACTS

The summary judgment record establishes the following facts.

Defendant Credit Union of Texas is a state-chartered credit union, with its principal place of business in Dallas, Texas.  Membership in Credit Union of Texas is limited to eligible persons who fall within its defined field of membership.  (D. App. 41).[2]  Plaintiff Stanford Hill became a member of Credit Union of Texas in August 2009, at which time he completed and signed a Membership Application and Account Authorization.  (D. App. 2-3, 41).  In that Membership Application, Plaintiff provided 214-xxx-4120 as his home telephone number.  (D. App. 2,41) (Note: xxx is used in placed of the actual three-digit prefix for purposes of Plaintiff's privacy. Similarly, the information has been redacted on the documents submitted with the Appendix.)

In July 2017, Plaintiff applied for a classroom supply loan in the amount of $1,000.00. (D. App. 5-6, 41).  Plaintiff acknowledges that the purpose of the loan was for classroom supplies. (D. App.113).  In the loan application, both the fields for the home phone and cell phone were populated with the number 214-xxx-4120.  (D. App. 5, 41).

The loan was granted, and on July 13, 2017 Plaintiff executed a Loan Agreement by which he promised to repay the amount of $1,000.00, plus interest at 8.89%, in 11 monthly installments

---

[2] A person may be a member of a credit union only if the person "shares a definable community of interest, in accordance with the credit union's articles of incorporation or bylaws . . . ."  §122.051(a), Tex. Fin. Code.

of $88.60 beginning August 15, 2017 and a final payment of $88.53 on July 15, 2018.  (D. App. 8-11, 41).  At the inception of the loan, arrangements had been made for payments to be made through automatic transfers from Plaintiff's deposit account, but if there were insufficient funds on deposit when a payment came due, the payment could not be funded until additional deposits were made. (D. App. 41-42).

The first payment in the amount of $88.60 was due on August 15, 2017 and was paid on August 16, 2017.  (D. App. 13, 42).  The next payment of $88.60 was due on September 15, 2017 and was paid on September 21, 2017.  (D. App. 13, 42).  The next payment of $88.60 was due on October 15, 2017, but was not paid timely.  (D. App. 13, 42).  It is Defendant's practice not to initiate formal collection activities until a loan account is more than ten days delinquent.  (D. App. 42).  Plaintiff's loan was not more than ten days delinquent until October 26, 2017, and no efforts were made to contact Plaintiff before that date.  (D. App. 42).

Defendant has contracted with AP Account Services to conduct collection activities on assigned delinquent accounts.  (D. App. 42, 46).  On October 30, 2017, Defendant assigned Plaintiff's account to  AP Account Services for collection.  Prior to that date, no telephone calls to Plaintiff were initiated by or on behalf on Defendant.  (D. App. 42, 47).  The first effort by AP Account Services to contact Plaintiff occurred on October 30, 2017, which resulted in a voice message being left when the call was not answered.  (D. App. 29, 47, 57-58).  The following day, on November 1, 2017, the payment due on October 15, 2017 was made, bringing the account current at that time.  (D. App. 13, 43).

The account again became delinquent for the payment due November 15, 2017.  (D. App. 13, 43).  That resulted in a phone call being placed to Plaintiff on November 30, 2017, which was

not answered.  (D. App. 28, 78).  On December 2, 2017, a representative of AP Account Services contacted Plaintiff by phone.  (D. App. 28, 77).  That was the first time that an actual conversation occurred between Plaintiff and a representative of Defendant concerning the delinquent account.  (D. App. 47).  During that conversation, Plaintiff said that he would "take care of it" and terminated the call.  (D. App. 31, 33).

The payment due on November 15, 2017 was paid on December 30, 2017.  (D. App. 13, 43).  No further payments have been made on the loan.  (D. App. 13, 43).  The remaining unpaid principal balance of the loan is $702.39, plus interest at the rate of 8.89% per annum from December 30, 2017.  (D. App. 13, 44).  Defendant is the owner and holder of the debt.  (D. App. 41).

It is Plaintiff's allegation that during a collection call on October 15, 2017 he requested that all such calls be ceased.  (Paragraphs 11, 32-33 of Plaintiff's Complaint [Doc. 1]; D. App.114).  When specifically asked to provide details concerning that allegation, Plaintiff responded that "Defendant is in a better position to access records of such documents and information."  (D. App. 113).  The only additional information provided by Plaintiff is this statement: "Plaintiff revoked consent via a telephone call with a representative of Defendant.  Plaintiff does not recall the individual representative with whom he spoke.  To the best of Plaintiff's recollection, Plaintiff advised Defendant to 'stop calling.  I will call you when I make a payment.'"  (D. App. 114).  Plaintiff does not allege that his request occurred at any time other than on October 15, 2017.

However, Plaintiff's loan was not delinquent on October 15, 2017.  (D. App. 13, 42).  Formal collection efforts were not commenced until October 30, 2017, after Defendant had assigned the account to AP Account Services for collection.  (D. App. 29, 42, 46).  Thus, no calls were made to Plaintiff on October 15, 2017, the date he alleges.  Additionally, it is Defendant's policy not to begin

formal collection efforts until an account is more than ten days delinquent, which did not occur until October 26, 2017. (D. App. 42). And, October 15, 2017 fell on a Sunday, and neither Defendant nor AP Account Services conducts business activities on Sundays. (D. App. 43, 48).

The records of Defendant and AP Account Services reflect that no calls were placed to Plaintiff on October 15, 2017 and that no calls were placed to Plaintiff before October 30, 2017. (D. App. 29, 87-88). The records produced by Plaintiff's cell phone carrier reflect the same facts. (D. App. 129-164).

Plaintiff is unable to provide any evidentiary support for his allegation that on October 15, 2017 he requested that the collection calls cease. (D. App. 106-07, 113-14). Plaintiff is unable to provide any evidentiary support that he requested the collection calls to terminate, other than his disproved assertion that he "revoked consent on October 15, 2017 via telephone call with a representative of Defendant." (D. App. 106-07, 113-14). Plaintiff is unable to provide any documentary evidence that he made any request for the collection calls to cease. (D. App. 119 - 20, 125-26). Plaintiff acknowledges that "Defendant is in possession of all call recordings and correspondence with Plaintiff", that "Defendant is in a better position to access records of such documents and information", and that "Defendant is in a better position to have records of such documents." (D. App. 106-07, 113-14, 119-20, 125-26). Defendant has no record that Plaintiff ever requested that collection calls be ceased, despite its policy and practice that any such requests be specifically noted. (D. App. 43).

There were only four occasions when calls were made and a representative of Defendant or AP Account Services actually spoke with Plaintiff: December 2, 2017, December 11, 2017, December 27, 2017, and May 17, 2018. (D. App. 17, 27, 28, 47). At no time during any of those

conversations did Plaintiff request that calls be ceased or communicate that he was revoking his consent to such calls.  (D. App. 31, 33-38, 47).  Complete audio recordings were made of each of those phone calls.  (D. App. 31, 48).  During the first call on December 2, 2017, Mr. Hill stated that he would "take care of it", but did not request that calls be ceased.  (D. App. 31, 33-34).  In the next call on December 11, 2017, Plaintiff stated that he was "going to take care of it" by making a payment "at the end of next week", but did not request that the calls be ceased.  (D. App. 31, 35-36).  During the next call on December 27, 2017, Mr. Hill stated that he would "make a payment Friday", but did not request that the calls be ceased.  (D. App. 31, 37).  During the last call on May 17, 2018, Mr. Hill immediately terminated the call, and did not request that the calls be ceased.  (D. App. 31, 38).

During none of those calls did anyone from Defendant or AP Account Services use profanity, vulgarity, or threatening or abusive language.  (D. App. 31, 33-38, 48).  None of those calls were placed at unusual or improper hours.  (D. App. 15-29, 50-102).  The earliest call was placed at 8:32 a.m., and the latest was placed at 8:38 p.m.  (D. App. 15-29, 50-102).

The purpose for assignment of the account by Defendant to AP Account Services was purely to attempt to collect the unpaid debt, and not to harass or intimidate Plaintiff.  (D. App. 44).

The records from Plaintiff's cell phone carrier (AT&T) confirm the details of the calls to Plaintiff.  No calls were made on October 15, 2017. (D. App. 129-131).  The first call was made on

October 30, 2017.  (D. App. 164).[3]  No calls were placed outside of accepted hours.[4]  The four calls

that resulted in actual conversations with Plaintiff were on December 2, 2017 for 2 minutes and 9

seconds (D. App. 167), December 11, 2017 for one minute and 57 seconds (D. App. 168),

December 27, 2017 for one minute and 29 seconds (D. App. 169), and May 17, 2018 for 18 seconds

(D. App. 170).[5]  These four calls coincide exactly with the audio recordings and the transcripts for

those calls. (D. App. 31, 33-38).  Nothing in the AT&T records conflict in any way with the records

of Defendant and AP Account Services.


## ARGUMENT AND AUTHORITY

### I.      SUMMARY JUDGMENT STANDARD

Summary judgment should be granted if the record establishes that there is no genuine

dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Rule

56(a), Fed. R. Civ. P.  Summary judgment is proper against a plaintiff who fails to make a sufficient

showing of the existence of an element essential to his claim and on which he will bear the burden

at trial.  ***Celotex Corp v. Catrett***, 477 U.S. 317, 322 (1986); ***Curtis v. Anthony***, 710 F. 3d 587, 594

(5th Cir. 2013).

The initial summary judgment burden is on the movant to identify areas essential to the non-

---

[3] The phone number (866)574-4005 is that of AP Account Services, the contract collection agent for Defendant.  That is the number identified by Plaintiff as the one initiating the allegedly offending calls.  See Paragraph 20 of the Complaint (Doc. 1).

[4] The AT&T records designate time by UTC (Coordinated Universal Time), an international time standard used in many scientific and web-based applications.  The conversion formula is -6 to Central Standard Time and -5 to Central Daylight Time. *https://earthsky.org/astronomy-essentials/universal-time.*

[5] The phone number (214)257-2740 belongs to Defendant, and shows up as the initiating number on some calls made by AP Account Services on accounts more than 60 days delinquent.

movant's claim in which there is an absence of genuine issue of material fact. ***Ace American Insurance Company v. Freeport Welding & Fabricating, Inc.***, 699 F.3d 832, 839 (5th Cir. 2012). It is not necessary for the movant to negate the elements of the non-movant's case; rather, the movant may meet its burden by pointing out the absence of evidence supporting the non-movant's case. ***Malacara v. Garber,*** 353 F. 3d 393, 404 (5th Cir. 2003).

If the moving party meets its initial burden, the responding party must go beyond the pleadings and specify actual facts showing there is a genuine, triable issue for trial. ***General Universal System, Inc. v. Lee,*** 379 F.3d 131, 141 (5th Cir. 2004). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. ***Anderson v. Liberty Lobby, Inc***., 477 U.S.242, 248 (1986).

Conclusory allegations, speculation, and unsubstantiated assertions which are supported by no more than a scintilla of evidence, as well as a party's self-serving affidavit or testimony, are insufficient to create triable issues of fact. ***Chaney v. Dreyfus Service Corp***., 595 F. 3d 219, 229 (5th Cir. 2010); ***DIRECTV, Inc. v. Budden***, 420 F. 3d 521, 531 (5th Cir. 2005).

The substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible, although the evidence is not required to be in admissible form for summary judgment purposes. ***Lee***, 859 F.3d at 355 (5th Cir. 2017).

## II.  TELEPHONE CONSUMER PROTECTION ACT

### A.     INTRODUCTION

In Count I of the Complaint, Plaintiff asserts that Defendant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227.  Specifically, Plaintiff alleges that Defendant

violated 47 U.S.C. §227(b)(1)(A)(iii), which prohibits certain calls using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service, other than calls made for emergency purposes or with the prior express consent of the called party.  Plaintiff alleges that "Defendant repeatedly placed or caused to be placed frequent non-emergency calls . . . to Plaintiff's cellular telephone number using an automatic telephone dialing system ("ATDS") or prerecorded or artificial voice without Plaintiff's prior consent . . . ." (Paragraph 26 of the Complaint [Doc. 1]).  Although Plaintiff alleges that the calls were made "without his prior consent," he also alleges that any prior consent was verbally revoked: "Specifically, Plaintiff verbally revoked consent to be called on October 15, 2017." (Paragraphs 32-33 of the Complaint [Doc. 1]). Plaintiff also alleges that "on October 15, 2017, Plaintiff asked Defendant to stop calling him." (Paragraph 11 of the Complaint [Doc. 1]).

It is thus Plaintiff's allegation that any collection calls were made without prior consent and, if he had given prior consent,  that he verbally revoked prior consent on October 15, 2017 when he asked Defendant to cease making calls.

To establish a cause of action for Count I, Plaintiff must show that calls were made without "prior express consent." 47 U.S.C. §227(b)(1)(A).[6]  To prevail on this claim, Plaintiff must establish either (1) that consent was never given or (2) consent was effectively revoked <u>and</u> calls were made after the revocation of consent.[7]

---

[6] Defendant does not dispute that calls were placed to Plaintiff's cell phone number and it does not contend that any calls were for emergency purposes. For this Motion alone, Defendant does not challenge whether or not an automatic dialing system was used. For purposes of this Motion, the focus is exclusively upon the issue of consent.

[7] If consent was initially given, and later revoked, calls made before the revocation of consent would not be in violation of the statute.

Defendant is entitled to summary judgment on the TCPA claim because: (1) Plaintiff provided consent to be called at his cell phone number; (2) Plaintiff never revoked consent; (3) Plaintiff cannot prove that he revoked consent; and (4) Plaintiff cannot prove that any calls were made <u>after</u> he revoked consent.

## B.      CONSENT

The Federal Communications Commission ("FCC") has determined that calls placed to wireless numbers that are provided by the borrower in connection with an existing debt are permissible because "the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." *In re Rules Implementing the Telephone Consumer Protections Act of 1991*, 23 F.C.C.R. 559, 564 (2008). This declaratory ruling by the FCC is binding.  *Adamcik v. Credit Control Services, Inc.*, 832 F. Supp. 2d. 744, 754 (W.D. Tex. 2011) (footnote 13).

A borrower who provides his or her cell phone number to a creditor consents to receiving automated and prerecorded calls at that number  in relation to any debt that may be incurred with that creditor. *Cherkaoui v. Santander Consumer USA, Inc.*, 32 F. Supp. 3d. 811, 815 (S.D. Tex. 2014); *Adamcik*, 832 F. Supp. 2d. at 753; *Cunningham v. Credit Management, L.P.*, 2010 WL 3791104 at *5 (N.D. Tex. 2010).

Here, Plaintiff provided Defendant with his cell phone number when he initially became a credit union member in 2009. (D. App. 2, 41).  That phone number was also included in the application for the subject loan. (D. App. 5, 41).  By providing his cell phone number to Defendant,

Plaintiff expressly consented to receive automated calls or recorded messages at that number.  In order to prevail on his TCPA claim, Plaintiff must therefore show that he revoked consent and that calls were made after the revocation of consent.

### C.        REVOCATION OF CONSENT

Because Plaintiff provided consent by furnishing Defendant with his cell phone number, any calls placed to that number did not violate the TCPA unless Plaintiff subsequently revoked his consent.  *Adamcik*, 832 F. Supp. 2d. at 753; *Cherkaoui*, 32 F. Supp. 3d. at 815.  Plaintiff did not revoke his consent.

There were only four occasions where actual conversations took place between Plaintiff and anyone calling by or on behalf of Defendant.  (D. App. 31, 33-38, 47).  In none of those conversations did Plaintiff request or direct that calls be stopped or say anything that might constitute a revocation of consent.  (D. App. 31, 33-38).  Because Plaintiff did not revoke consent, none of the calls alleged by Plaintiff could have been in violation of the TCPA.

Complete and comprehensive records were made of every communication with Plaintiff. All actual phone conversations were recorded. (D. App. 31, 48).  Those recordings and other records establish that Plaintiff did not revoke his consent.   (D. App. 31, 33-38).

### D.        PLAINTIFF CANNOT PROVE REVOCATION OF CONSENT

Plaintiff specifically alleges that he revoked consent on October 15, 2017, by asking Defendant to stop calling him.  (Paragraphs 11 and 33 of the Complaint [Doc. 1]).  He does not allege revocation of consent on any other date.

Plaintiff can provide no evidentiary support for his allegation that he revoked consent or that he did so on October 15, 2017, other than a statement that "to the best of Plaintiff's recollection, Plaintiff advised Defendant to 'stop calling. I will call you when I make a payment.'" (D. App.114). Plaintiff can provide no independent evidentiary support for that "recollection"; on the contrary, he acknowledges that Defendant has superior information and is "in a better position" to provide relevant information.  (D. App. 113-14).

No telephone conversation occurred between Plaintiff and a representative of Defendant on October 15, 2017 (the date Plaintiff alleges he revoked consent).  First, collection efforts were not instituted until October 30, 2017, when the account was assigned by Credit Union of Texas to AP Account Services. (D. App. 42, 46).   Second, that date was a Sunday, and neither Defendant nor its collection contractor (AP Account Services) conducts business activities on Sundays.  (D. App. 43, 48).  Third, the subject debt was not sufficiently delinquent that collection efforts would have been initiated on October 15, 2017.  (D. App. 42, 43).  Fourth, no actual conversations took place between Plaintiff and a representative of Defendant until December 2, 2017.  (D. App. 47).  Fifth, all phone conversations were recorded, and those recordings establish that Plaintiff did not revoke consent. (D. App. 31, 33-38).

Plaintiff can furnish no evidence to support his contention or his allegation that he revoked consent during a telephone conversation with Defendant on October 15, 2017.  That conversation did not occur. Plaintiff has not alleged that he revoked consent on any other date.  Plaintiff can present no evidentiary support that he revoked consent on October 15, 2017 or at any other time. The records from Plaintiff's cell service provider (AT&T) show that no call was made to Plaintiff by or on behalf of Defendant on October 15, 2017.  (D. App. 129-31).

Plaintiff cannot recover for his TCPA claim unless he demonstrates that his prior consent was revoked.  *Cherkaoui*, 32 F. Supp. 3d. at 815 (summary judgment granted for the defendant because the plaintiff had consented by providing his cell phone number on the credit application and plaintiff failed to provide sufficient evidence to raise a genuine issue of material fact as to whether he revoked consent); *Cunningham*, 2010 WL 3791104 at *5 (finding that the plaintiff consented to receiving calls by providing his cellular number to the creditor, and the plaintiff failed to provide sufficient evidence that he revoked his consent); *Van Patten v. Vertical Fitness Group, LLC*, 847 F. 3d. 1037 (9th Cir. 2007) (debtor who had provided his cellular telephone number in connection with his application for a gym membership did not establish a violation of the TCPA absent a showing that he told the gym to stop contacting him).  Because prior consent has been proven, and because Plaintiff cannot provide sufficient evidence of revocation, Defendant is entitled to summary judgment on the TCPA claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### E.      PLAINTIFF CANNOT PROVE A VIOLATION OF THE TCPA

Even assuming, for current purposes, that Plaintiff can raise a disputed fact issue on whether he revoked his consent, he cannot provide sufficient evidence as to <u>when</u> that occurred.  His only allegation is that it occurred on October 15, 2017.  Yet, as shown above, it is conclusively demonstrated that no conversation occurred between Plaintiff and Defendant or its representatives on October 15, 2017.  Plaintiff has not alleged, nor can he produce evidence, that he revoked consent on any other date.

Under the statute, any calls made with prior consent are not improper.  Prior consent has been conclusively proven.  In order for Plaintiff to show a TCPA violation, he must prove that he

revoked his consent (which he did not do and cannot prove) <u>and</u> that calls were made after he effectively revoked consent.  Unless he can prove a specific date on which revocation of consent occurred, he cannot show that any calls from or on behalf of Defendant were made after consent was revoked.

Stated differently, the fact that calls may have been made to Plaintiff's cell phone  –  or the date or number of such calls  –  is irrelevant unless consent had been revoked prior to the calls.  In the absence of a proper showing of a date when consent was revoked, there can be no showing that any calls violated the TCPA.  Because Plaintiff cannot prove a violation, Defendant is entitled to summary judgment on the claim.  ***Celotex***, 477 U.S. at 323.

### F.      *YOUNG v. MEDICREDIT*

The facts in the present case are strikingly similar to those recently considered by Senior United States District Judge Nancy F. Atlas in ***Young v. Medicredit***, 2019 WL 1923457 (S.D. Tex. 4/29/2019).  In that case, Plaintiff Young had obtained medical treatment at Swedish Medical Center.  In connection with her treatment, Plaintiff signed a form giving the Center consent to contact her by telephone.  ***Id.*** at *1.  Disputing the debt as being excessive, Plaintiff failed to pay the account and the Center placed it for collection with Defendant Medicredit.  ***Id.***  After receiving approximately 80 collection calls, Plaintiff filed suit against Defendant Medicredit for violations of the Telephone Consumer Protection Act.  ***Id.*** at *1 and 5.

Because Plaintiff had expressly consented to the calls, the key issue was whether she had revoked her consent.  Plaintiff alleged that she orally revoked her consent.  Her allegation was that she asked Medicredit to stop calling her, but she did not remember when that occurred.  She had no

recordings of calls during which she asked Medicredit to stop calling her or otherwise revoked her consent. *Id.* at *3.  Plaintiff's mother provided sworn testimony that she overheard Plaintiff say "stop calling me" during phone calls in September, October, and November of 2015. *Id.*  However, Medicredit's call history record established that the account was not assigned to it for collection until December 2, 2015 and the first telephone call did not occur until December 7, 2015. Collectively, this proffered evidence was determined to be insufficient to raise a genuine, triable issue regarding an alleged oral revocation of consent. *Id.* at *4.

Defendant Medicredit presented evidence that there were only two phone calls during which a representative actually spoke with Plaintiff, and recordings of those phone calls where in the record. *Id.*  In neither of those recorded phone calls did Plaintiff say anything that could be considered to be a revocation of consent. *Id.*  On that record, Judge Atlas granted Defendant summary judgment on the TCPA claim. *Id.*

The record in this case presents an exact parallel to the circumstances in *Young.*

• The Plaintiff in *Young* expressly consented to being contacted by phone through a signed form.  Here, Plaintiff Hill expressly consented to being contacted by phone by providing his phone number to Defendant both in his initial Membership Application and in his loan application.

• The Plaintiff in *Young* alleged that she had asked Medicredit to stop calling her, but could provide no details other than her assertion that she "repeatedly" asked Medicredit to stop calling her.  Here, Plaintiff alleges that he orally requested Defendant to stop making calls on October 15, 2017, but can recall no other details of that conversation, and cannot explain how he identified October 15, 2017 as the date on which the conversation occurred.

- In *Young*, the Defendant's records established that there were two telephone calls in which a representative actually spoke to Plaintiff.  Both calls were recorded, and in neither did the Plaintiff request that the calls be stopped.  Here, Defendant's records establish that there were only four times when a collection agent actually spoke with Plaintiff.  Those calls were recorded, and in none of them did Plaintiff request that the calls be stopped or otherwise revoke consent.

- In *Young*, the Plaintiff had no recordings of other conversations or any other evidence that she orally revoked consent.  Here, Plaintiff has no additional recordings of conversations or additional evidence that he orally revoked consent.

- In *Young*, Plaintiff provided sworn testimony from a witness that she had heard the Plaintiff say "stop calling me" on various occasions through November 2015.  However, the Defendant's call records established that the account had not been assigned for collection, and no calls were placed, until December 2015.  Here, Plaintiff's only assertion is that he orally requested that the calls be stopped during a phone conversation on October 15, 2017.  However, Defendant's records establish that the account was not delinquent on that date and was not assigned for collection  –  and no calls were placed – until approximately two weeks later.

In *Young,* Judge Atlas determined that summary judgment was proper on the TCPA claim because it was established that Plaintiff had given express consent and Plaintiff failed to present evidence to raise a genuine triable issue regarding revocation of that consent.  On the summary judgment record in this case, the same result should be reached.  Plaintiff provided express consent to Defendant, and is incapable of raising a genuine, triable issue as to revocation of that consent.

The Court should employ the same analysis as Judge Atlas in *Young*, and grant summary judgment to Defendant on the TCPA claim.

## III.  TEXAS DEBT COLLECTION ACT

### A.  INTRODUCTION

In Count II of the Complaint, Plaintiff asserts that Defendant violated the Texas Debt Collection Act ("TDCA"), which is contained in Chapter 392 of the Texas Finance Code. Specifically, Plaintiff alleges that Defendant violated §392.302(4), Tex. Fin. Code, which provides that "a debt collector may not oppress, harass, or abuse a person by causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number."

The term "debt collection" includes efforts to collect consumer debts that are due or alleged to be due to a creditor.  §392.001(5), Tex. Fin. Code.  The term "consumer debt" is an obligation or alleged obligation incurred "primarily for personal, family, or household purposes."  §392.001(2), Tex. Fin. Code.  A "debt collector" means a person who directly or indirectly engages in debt collection. §392.001(6), Tex. Fin. Code.  Thus, both the term "debt collection" and the term "debt collector" in the TDCA relate exclusively to the collection of "consumer debts" as defined.

To establish a right to relief under the TDCA, a plaintiff must prove: (1) the debt is a consumer debt; (2) the defendant is a debt collector as defined; (3) the defendant committed a wrongful act in violation of the TDCA; (4) the wrongful act was committed against the plaintiff; and (5) the plaintiff was injured as a result fo the wrongful act.  *Wease v. Ocwen Loan Servicing, LLC*, 2015 WL 12533060 at *3 (N.D. Tex. 2015 (modified 2017 WL 1408821; aff'd in part, 915 F. 3d.

987 (5th Cir. 2019))).  In this case, Plaintiff must thus prove that the subject debt is a consumer debt;

that Defendant oppressed, harassed, or abused Plaintiff by causing a telephone to ring repeatedly or

continuously, or by making repeated or continuous telephone calls; that Defendant did so  with the

intent to harass Plaintiff; and that Plaintiff suffered injury as a result.

Defendant is entitled to summary judgment on the TDCA claim because: (1) the subject debt

was not a consumer debt; (2) Defendant's conduct did not violate §392.302(4), Tex. Fin. Code; (3)

Plaintiff cannot prove that Defendant violated §392.302(4), Tex. Fin. Code; and (4) Plaintiff cannot

prove that he suffered damages.


### B.  CONSUMER DEBT

The TDCA applies only to collection of a "consumer debt" which is on incurred "primarily

for personal, family, or household purposes."  §392.001(2), Tex. Fin. Code.  Here, the evidence

conclusively establishes that the subject debt was not a consumer debt.

The loan application identified the purpose of the requested credit as "classroom supply

loan."[8]  Plaintiff acknowledges that he obtained the subject loan "for classroom supplies." (D. App.

113).  Thus, the subject debt was not obtained by Plaintiff for "personal, family, or household

purposes."  Rather, it was for supplies to be used in his profession as a teacher/coach.  The debt was

not incurred for his own use or that of his family, but rather for his students or athletes.  While the

debt is a "personal debt" because it is owed individually by Plaintiff, it is not a consumer debt.

A debt incurred for business or commercial purposes is not a consumer debt subject to the

---

[8] Eligible educators are entitled to a tax deduction for unreimbursed trade or business expenses, including supplies and supplementary materials used in the classroom. (See *irs.gov/taxtopics/tc458.*)  Defendant offers classroom supply loans as a loan product to eligible teachers. (See *www.cutx.org/Get-it/Personal-Loans/.*)

reach of the TDCA.  *Garza v. Bancorp Group, Inc.*, 955 F. Supp. 68, 71-2  (S.D. Tex. 1996) (the acquisition of security equipment installed at a family owned business for the purpose of protecting family members was not a consumer debt); *Saylor v. Pinnacle Credit Services, LLC*, 118 F. Supp. 3d.  881, 886 (E.D. Va. 2015, aff'd. 667 Fed. Appx. 829 (4th Cir. 2016)) (personal credit card purchases at a hardware store for materials in connection with the buyer's carpentry business did not create a consumer debt under the Federal Debt Collection Practices Act).

In determining whether a transaction creates a consumer debt, courts "must examine the transaction as a whole and the purpose for which the credit was extended in order to determine whether the transaction was primarily consumer or commercial in nature." *Garcia v. Jenkins-Babb, LLP*, 2013 WL 6388443 at *6 (N.D. Tex. 2013) (citing *Riviere v. Banner Chevrolet, Inc.*, 184 F. 3d. 457, 462 (5th Cir. 1999)).[9]  Plaintiff bears the burden of proof and must identify evidence showing that the subject debt was incurred for personal, household, or family purposes. *Id*. at *7. The fact that a debt may be a "personal loan" is conclusory and not dispositive of the issue. *Id.*

The evidence establishes conclusively that Plaintiff incurred the subject debt for the purpose of obtaining supplies and materials to be used at school premises in connection with his occupation. As a matter of law, this does not create a "consumer debt."  Plaintiff's claim under the TDCA should be dismissed.

## C.  STATUTORY VIOLATION

The only TDCA violation alleged by Plaintiff is §392.302(4), Tex. Fin. Code.  (Paragraphs

---

[9] The definition of "consumer debt", "consumer transaction", and the like arise in various consumer protection statutes, and are considered to be analogous terms for purposes of the various statutes. *Garcia*, 2013 WL 6388443 at *6.

43-45 of Plaintiff's Complaint).  More specifically, Plaintiff alleges that Defendant violated that

statute by continuously calling Plaintiff's cellular phone. (Paragraphs 44-45 of Plaintiff's Complaint

[Doc. 1]).   The totality of the factual allegations to support this claim are found in Paragraph 44 of

the Complaint:

> Defendant violated TDCA when it continuously called Plaintiff's cellular phone after
> he notified it to stop calling.  This repeated behavior of systematically calling
> Plaintiff's phone despite his demands was oppressive, harassing, and abusive.  These
> repeated contacts were with the hope that Plaintiff would succumb to the harassing
> behavior and ultimately make a payment.  The frequency and volume of calls show
> that Defendant willfully ignored Plaintiff's pleas with the intent of annoying and
> harassing him.

Plaintiff does not allege any profane or abusive language.  He does not allege any threats of

violence.  He does not allege any calls at inconvenient or unusual times.  Instead, he alleges only

that Defendant called too often, and made calls despite Plaintiff's pleas to stop (which has been

conclusively refuted).

To establish a violation, Plaintiff must prove: (1) that Defendant oppressed, harassed, or

abused plaintiff; (2) that Defendant did so by causing a telephone to ring repeatedly or continuously

or by making repeated or continuous telephone calls; and (3) that Defendant did so with the intent

to harass Plaintiff at the called number. §392.302(4), Tex. Fin. Code.

Defendant is entitled to summary judgment on the TDCA claim because (1) it is conclusively

established that Defendant did not violate the statute and (2) there is no evidentiary support for

Plaintiff's claim under the statute.  See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wease

v. Ocwen Loan Servicing, LLC*, 915 F. 3d. 987, 997 (5th Cir. 2019).

There is only a single factual assertion made by Plaintiff to support his claim for a TDCA

violation: that Defendant continued to make calls after Plaintiff had demanded that the calls cease.

(Paragraph 44 of Plaintiff's Complaint).  The foundation of that assertion – that Plaintiff in fact requested the collection calls to cease – has been conclusively refuted.  There being no other basis upon which Plaintiff claims a violation, the claim should be dismissed for that reason alone.

A violation of the statute requires a showing of both "a great volume of phone calls" and "extenuating circumstances" such as calls at odd hours or threats of personal violence.  ***Robinson v. Wells Fargo Bank, N.A.***, 576 F. Appx. 358, 362 (5th Cir. 2014); ***Charles v. Exeter Finance Corp.***, 2017 WL 6888852, *2 (S.D. Tex. 2017).  In the absence of evidence that calls were placed at extreme hours or that the collection efforts included threats of violence, there is no violation even if there were an excessive number of calls.  ***Robinson***, 576 Fed. Appx. at 362.

No calls were made at odd or unusual hours, and there were no threats of violence.  Plaintiff has not alleged threats of violence or calls at odd hours, and he can present no evidence of those elements.  Only a very few of the calls resulted in an actual conversation with Plaintiff, and in none of those was there any profanity, abusive language, or threatening or harassing language.  The vast majority of the calls resulted in a recorded message, which was always neutral and innocuous. As a matter of law, the calls did not violate the statute.  See ***Robinson,*** 576 Fed. Appx. at 362 (no violation shown because no calls were placed outside of regular business hours or included threats of violence, despite the fact that Plaintiff testified that there were "several calls a day"); ***Cherkoui v. Santander Consumer USA, Inc.***, 32 F. Supp. 3d. 811, 816 (S.D. Tex. 2014) (the volume of calls alone was insufficient to establish intent to harass and there was no evidence to show the requisite intent to harass).

The earliest call was placed at 8:32 a.m. The latest call was placed at 8:38 p.m.[10]  Only four

calls resulted in an actual conversation with Plaintiff. There were no threats of violence or abusive

language or profanity.  These established facts negate a violation of §392.302(4), Tex. Fin. Code.

The established facts also negate "intent to harass" by Defendant.  Defendant assigned

Plaintiff's delinquent account to AP Account Services, LLC for collection on October 30, 2017.

Defendant uses this third party for the purpose of actually collecting debts, not for the purpose of

abusing or harassing debtors.  (D. App. 44).  All of the calls placed to Plaintiff on or after October

30, 2017 –  including all of the calls alleged by Plaintiff to violate the various statutes –  were

placed by AP Account Services, LLC, and not by Defendant.  Defendant did not cause a telephone

to ring repeatedly or continuously and did not make repeated or continuous telephone calls with the

intent to harass Plaintiff for the simple reason that Defendant did not make the calls.  Thus,

Defendant did not violate §392.302(4), Tex. Fin. Code, and Plaintiff's claim under the TDCA fails.

Plaintiff bears the burden to prove all of the elements of his cause of action under the TDCA.

Plaintiff can produce no evidentiary support that Defendant threatened physical violence or called

at improper times; that Defendant oppressed, harassed, or abused Plaintiff; or that Defendant acted

with the intent to harass Plaintiff. Accordingly, summary judgment should be granted in favor of

Defendant on Plaintiff's TDCA claim.  *Celotex,* 477 U.S. at 323; *Wease*, 915 F. 3d. at 997.


### D. INJURY

To recover for the claimed violation under the TDCA, Plaintiff must establish "actual

---

[10]  By federal statute, a creditor is entitled to assume that the period between 8:00 a.m. and 9:00 p.m. is a
convenient time to contact a borrower.  15 U.S.C. §1692c(a)(1).  None of the calls occurred outside of that time
frame.

damages." §392.403(a), Tex. Fin. Code; *Wease*, 2015 WL 12533060 at *3. Plaintiff can provide no evidentiary support for any actual damages resulting from the claimed violated of the TDCA. Accordingly, Defendant is entitled to summary judgment on that claim.


## IV.    DEFENDANT'S COUNTERCLAIM

By its Counterclaim, Defendant seeks recovery of $702.39, plus accrued financed charges, for the remaining unpaid balance under the promissory note executed by Plaintiff.  (Paragraphs 4.1-4.3 of Defendant's Original Answer and Counterclaim [Doc. 23]).   Under Texas law, a party suing to recover under a promissory note is entitled to judgment by establishing  the promissory note and proving that the responding party signed it, that the claimant is the legal owner and holder of the instrument, and that a certain balance is due and owing on the note.  *Duchene v. Hernandez,* 835 S.W.3d 251, 258 (Tex. App. - El Paso, 2017; no pet.); *Express Working Capital, LLC v. One World Cuisine Group, LLC,* 2019 WL 1959924 at *4 (N.D. Tex. 2019).

The summary judgment record establishes the promissory note.  (D. App.8-11).  Plaintiff admits making the loan.  (Paragraph 6 of the Complaint [Doc. 1]).  The record establishes that Plaintiff signed the note.  (D. App. 8, 41).

The note was in the initial principal amount of $1,000.00, with interest at 8.89%, to be repaid in 11 monthly payments of $88.60 each beginning August 15, 2017 and a final payment of $88.53 on July 15, 2018.  (D. App. 8, 40).  Plaintiff did not make any payments after December 30, 2017. (D. App. 13, 43).  The promissory note is now fully matured, with the final payment being due in July 2018.  (D. App. 8).  The unpaid principal balance owing under the promissory note is $702.39, plus accrued finance charges at the rate of 8.89% per annum from December 30, 2017.  (D. App.8,

44).   Defendant is the owner and holder of the note.  (D. App. 41).

The summary judgment record establishes all of the necessary elements for recovery on Defendant's Counterclaim.  Defendant is entitled to recovery from Plaintiff in the amount of $702.39, plus interest at the rate of 8.89% per annum from December 30, 2017.

## CONCLUSION

Defendant has established that it is entitled to summary judgment both with respect to Plaintiff's claims and with respect to Defendant's Counterclaim.  Defendant requests summary judgment that Plaintiff take nothing by his claims and causes of action against Defendant, that all such claims and causes of action be dismissed with prejudice, and that Defendant recover from Plaintiff the amount of $702.39, plus interest at the rate of 8.89% per annum from December 30, 2017.

Respectfully submitted,

BLALACK & WILLIAMS, P.C.

Attorneys for Defendant Credit Union of Texas

/s/ Randy Roberts
Randy Roberts, ID#17016400
rroberts@blalack.com
4851 LBJ Freeway, Ste. 750
Dallas, TX 75244
214/630-1916; 214/630-1112 (fax)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date the foregoing document was served as required by the Federal Rules of Civil Procedure on the 22nd day of May, 2019.

/s/ Randy Roberts<br>
Randy Roberts